IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH - CENTRAL DIVISION

| | |
|---|---|
| DARRELL BOLDT<br><br>Petitioner,<br><br>vs.<br><br>JO ANNE B. BARNHART, Commissioner,<br>Social Security Administration<br><br>Respondent. | **ORDER**<br><br>Case No. 2:02-CV-623 DB<br>Judge Dee Benson |

Darrell Boldt appeals the decision of the Social Security Commissioner denying his application for disability insurance and supplemental security income benefits. Having considered the parties' briefs, the administrative record, and the relevant law, the Court AFFIRMS the Commissioner's decision.

*I.*

At the time of the ALJ hearing, Mr. Boldt was thirty-seven years old, had a high school education, and work experience as a copier, a truck unloader, a mail handler, and a corrections officer. Mr. Boldt bases his claim for benefits on a progressive neurological disorder, weakness, numbness, pain, memory problems, dysarthria, lack of coordination and balance, and anxiety and panic. Rec. at 16–17.

Mr. Boldt's daily activities revolved around the care of his four children while his wife worked. Mr. Boldt often attempted to prepare simple meals for his children, and did light housework such as sorting laundry and washing dishes. He used the internet, went shopping with his wife, and attended church several hours each week. Sometimes he could shower and dress himself, but testified that at other times his wife had to assist him. Mr. Boldt had been

using a wheelchair since November 1999 due to alleged problems with balance and leg strength. Mr. Boldt testified that fatigue, memory and concentration problems, pain, dysarthria, and anxiety made it impossible for him to work. He spent most of the day sitting, watching television or listening to music.

In January 1998, Dr. John Greenlee evaluated Mr. Boldt for neurological disorders because of the weakness Mr. Boldt complained of in his lower extremities. Rec. at 233–34. Dr. Greenlee had a number of tests performed but the results were normal, and Dr. Greenlee offered a positive prognosis: "I have not found any objective evidence of neurological deficit in this man, and I see no reason why he should not undergo full recovery." Letter, Jan. 28, 1998, Rec. at 234. At about this same time, two other University of Utah Neurology Department physicians also examined Mr. Boldt and similarly failed to find objective physical evidence of neurologic difficulties; although Mr. Boldt had subjective complaints, they were "not borne out on neurological examination to have evidence of underlying anatomic abnormalities or organic disease." Feb. 4, 1998, Rec. at 229–32.

In March 1998 another neurologist, Dr. Gerald Moress, examined Mr. Boldt. Dr. Moress concluded that the Mr. Boldt's problem "appears to be patently factitious. The findings on the examination would not be of an organic nature. I suspect this is a conversion reaction. . . . A psychological evaluation is sorely in need." Rec. at 245.

In June 1998, Mr. Boldt had knee surgery. Rec. at 251. Initially he felt better, but during a January 26, 1999 visit to the surgeon who performed his knee surgery, Mr. Boldt said he was having problems with his legs giving way, although his knee examination was normal. Rec. at 262.

In February 1999, Dr. Mary Alderson saw Mr. Boldt at Cottonwood Hospital emergency

room for intermittent episodes of severe weakness. Rec. at 265. She ordered a spinal tap, MRI, and MRA of brain, all of which were normal. *Id.* Mr. Boldt was admitted to the hospital, but on his second day in the hospital, he was "back to normal" and his "symptoms cleared suddenly and completely." *Id.* Dr. Alderson was unable to identify an organic cause for Mr. Boldt's symptoms and referred him to Dr. Patrice Duvernay, a neurologist, for a second opinion. Rec. at 276.

Dr. Duvernay observed that Mr. Boldt's speech difficulties and hand tremors could be distracted, and agreed with Dr. Alderson's assessment that "it is very difficult to think of one unifying neurological condition which could cause his myriad of symptoms." Rec. at 330.

Finally, in May 1999, Mr. Boldt began seeing Dr. David Roberts. Rec. at 471. Between May 1999 and June 2000, Dr. Roberts saw Mr. Boldt approximately twenty-four times. After a review of the existing records and performing his own examinations and testing, Dr. Roberts opined that Mr. Boldt had "a progressive neurological disorder involving intermittent weakness, numbness, and pain, as well as dysarthria, confusion, memory difficulties and panic attacks." Rec. at 466. Dr. Roberts concluded in July 1999 that Mr. Boldt was "completely disabled." *Id.* Dr. Roberts reaffirmed his opinion that Mr. Boldt was disabled in June 2000. Rec. at 20.

Those doctors who reviewed Mr. Boldt's file for the proceedings before the Commissioner disagreed with Dr. Roberts's conclusion, opining that Mr. Boldt was not disabled. Two DDS physicians, Drs. Burkett and Tettlebach, evaluated Mr. Boldt's case and concluded he could perform a range of sedentary and light work. Rec. at 429–36.

Mr. Boldt applied for Disability Insurance Benefits and Supplemental Security Income benefits on March 8, 1999, alleging that he had been unable to work since March 28, 1998. His claim was denied at the initial and reconsideration levels of administrative review in August 1999

and October 1999, respectively, and he requested a hearing before an Administrative Law Judge (ALJ), who found that Mr. Boldt was not disabled and had the Residual Functional Capacity to perform sedentary work in the national economy.[1] The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. *See* 42. U.S.C. 405(g); *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II.

This Court reviews the Commissioner's decision only to determine whether its factual findings are supported by substantial evidence in the record and whether it applies the correct legal standards. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal*, 331 F.3d at 760 (quotations and citation omitted). This Court is not free, however, to reweigh the evidence or substitute its discretion for that of the Commissioner. *Hamlin*, 365 F.3d at 1214.

The Commissioner employs a five-step process in deciding whether a claimant is disabled. *See Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The Commissioner determines 1) whether the claimant is currently engaged in substantial gainful activity; 2) whether the claimant suffers from a severe impairment or combination of impairments; 3) whether the impairment is equivalent to a listed impairment; 4) whether the impairment prevents the claimant from performing the work he previously performed; and 5) whether the claimant remains capable of performing work other than his previous work. *Id.* The entire analysis need not be completed if one of the early steps in the analysis establishes a particular claimant is or is not disabled. *Id.*

---

[1] An earlier disability claim filed in May 1997 was denied by an ALJ on March 27, 1998, but Mr. Boldt did not appeal that decision.

The ALJ found Mr. Boldt had not engaged in substantial gainful employment since the alleged onset of his disability, and that he suffered from "memory limitations, progressive neurological syndrome, a rotator cuff injury, and partial epilepsy." Decision of April 12, 2001, Rec. at 17. The ALJ found that these impairments were severe, but that they were not equivalent to one of the listed impairments. The ALJ found that the impairments would not permit Mr. Boldt to perform his past work, but that they would not prevent Mr. Boldt from performing a significant range of sedentary work. *Id.* at 22.

Mr. Boldt's chief argument is that the ALJ improperly rejected the opinion of Dr. Roberts, his treating neurologist, who opined in July 1999 and June 2000 that Mr. Boldt was completely disabled and unable to work. The weight an ALJ assigns to the opinion of a treating physician depends on the nature of the opinion. The regulations direct that an ALJ give controlling weight to the opinion of a treating physician as to the nature and severity of a claimant's symptoms if that opinion is well supported and not inconsistent with other substantial evidence in the record. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The opinion of a treating physician as to whether or not a claimant is totally disabled, however, is not dispositive "because final responsibility for determining the ultimate issue of disability is reserved to the Secretary." *See Id.* §§ 404.1527(e)(2), 416.927(e); *See also Castellano v. Secretary of Health and Human Services*, 26 F.3d 1027, 1029 (10th Cir. 1994).

The ALJ rejected Dr. Roberts's opinion as to disability because it "indicate[d] very extreme limitations that are unsupported by objective evidence, inconsistent with the claimant's testimony at the hearing and inconsistent with the claimant's activities of daily living as demonstrated in the record. Dr. Roberts own extensive examination of the claimant in May 2000 showed little in the way of objective findings." Rec. at 21. The three reasons given by the ALJ

for rejecting Dr. Roberts's opinion are adequate to sustain his decision. While Mr. Boldt's brief lists the results of a number of tests Dr. Roberts conducted at various points, those results are given without any effort to explain why any of them support Dr. Roberts's conclusions of extreme limitations in functioning. In addition, Dr. Roberts's reports often contained minimal objective findings. *See, e.g.*, Rec. 452–54, 462–465, 467–470, 474–475. These findings, moreover, were often based on Mr. Boldt's description of his symptoms rather than on physical examination. For example, on May 26, 1999, Dr. Roberts reported that the physical examination was "primary [sic] deferred due to the large number of records reviewed and the initial discussion and conference with the patient and his wife." Rec. at 474. On June 9, 1999, Dr. Roberts again indicated, under the heading "objective," that "examination is once again fairly truncated due to the voluminous number of records to review and to discuss with the patient." Rec. at 469. On June 17, 1999, Dr. Roberts recorded Mr. Boldt's height, weight, blood pressure, and pulse and reported that the "remainder of the examination is unchanged." Rec. at 467. On July 21, 1999, when Dr. Roberts wrote a letter offering his opinion that Mr. Boldt was disabled, his records again report that the physical examination was "unchanged." The record provides scanty objective evidence in support of Dr. Roberts's opinion as to disability and substantial support for the ALJ's rejection of Dr. Roberts's conclusions. Dr. Roberts's conclusions are also contradicted by a number of other doctors, both those who examined Mr. Boldt and those who reviewed his records. While a treating physician's opinion is entitled to greater weight than those of non-treating physicians, Dr. Roberts is here the only doctor among many who found Mr. Boldt to have severe restrictions, a fact the ALJ was entitled to take into consideration in evaluating Dr. Roberts's opinion.

      The ALJ also rejected Dr. Roberts's opinion because he found it to be inconsistent with Mr. Boldt's testimony at the hearing and his activities of daily living. There is also evidence in

the record to support this finding. On a form he filled out detailing his activities of daily living in May 1999, Mr. Boldt indicated he fed his children breakfast in the mornings and helped clean the living room and kitchen in the afternoon, albeit slowly. Rec. at 138, 407. In the evenings he would feed the children and help them get ready for bed. *Id.* He would also attend church for one to three hours on Sundays, where he performed duties as president of the Sunday school. *Id.* at 140. He also testified to cooking his children's meals, Rec. at 56, helping with laundry, *id.*, and caring for salt water fish, *id.* at 142.

Finally, in a footnote in his reply brief, Mr. Boldt raises as an alternative basis for reversing the Commissioner's decision the possibility that he could have a somatoform disorder that would meet or equal the listing for that disorder. This Court will not consider an argument made for the first time in a reply brief. This rule is supported by the local rules governing motions practice as well as by basic considerations of fairness. *See* DUCivR 7-1(b)(3) (limiting the subject matter of reply memoranda to rebuttal of matters raised in opposition memoranda). A contrary rule would take from one party the opportunity to test the factual assertions and legal arguments of the other, and deprives this Court of argument on both sides of an issue. *See Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000).

### III.

The Commissioner's decision denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act is AFFIRMED.

IT IS SO ORDERED.

Dated this 8th day of May, 2006.

Dee Benson
United States District Court Judge